Tucker, P.
If we confine ourselves to this record as we find it, and do not improperly draw the inference from á verdict which has been set aside, that the record contained another declaration, very little difficulty occurs as to the pleadings. The record shews a declaration for the five slaves, the children of Amy, filed four years anteriour to the first verdict. It is very possible it might have been originally for Amy the mother alone, and that, upon the leave to amend, her name was stricken out and those of the children inserted. But this does not appear, and we are not at liberty to conjecture that this was done. As the record stands, we can only infer that the leave to amend was waived, and of course the cause stood upon the first declaration. Then, as to the pleadings. The first plea might and ought to have been demurred to, for it makes defence as to the whole, yet denies detention only of one. But this defect, it is said, is cured after verdict. Stephen on Pleading, p. 233. And even if it were not, the appellant could not object to his own bad plea; for a repleader is never awarded to him who has committed the fault. Doug. 396. Kirtley v. Deck, 3 Hen. & Munf. 388. Tidd’s Pract. 830. The judgment therefore must stand, unless there appears to have been error in the conduct of the trial. This, I think, clearly appears.
We are to remember that this case is not that of a demurrer to evidence. We give no opinion, therefore, on the question whether the resumption of the possession before the lien or levy of the execution, the debt having been contracted many years anteriour to the loan, revested in the plaintiff all his rights or not. The naked'question is presented here, whether the possession resumed by the attorney in fact is to be considered as commencing at the time of the resumption, or at the *87 date of his power. I can see no ground for the posi-~ tion that the resumption relates back to the date of the power. Until the levy of Brown Sf Co.’s execution in April 1811, the slave Amy was in the possession of Samuel Baker. From that date until the surrender by the agent of Brown Sf Co. she was in custody of the law. She could not be at the same time in the possession of the sheriff and of Hodnett’s agent. She was therefore not actually in Hodnett’s possession, through his agent, until the surrender on the 9th of June 1811. Nor after the surrender could she be construed to have been in his possession from the date of the power. For Brown Sf Co. did not surrender their lien; they took Henry Baker’s bond for it, and the possession acquired was a purchased possession, which must be counted from the time of the purchase. Again, the sheriff’s property in goods taken by execution is a special property, and when the execution is discharged or the lien is removed, the property and possession reverts to him from whom it was taken; that is, in this case, it reverted to Samuel Baker; and it was indeed delivered to Henry Baker for him. And although Henry, by virtue of his power, became instantly invested by remitter in right of Hodnett, he could not be so invested till he came into possession, for remitter presumes, ex vi termini, an actually acquired possession. Indeed the supposition that the possession taken on the 9th of June could relate to the 28th of May is only a fiction by relation, and this fiction cannot be admitted to the prejudice of the rights of creditors. The demand, itself does not appear to have, been made previous to the 9th of June. And though an actual demand followed by acquisition of the possession may be considered as breaking the continuity of the loanee’s possession, it would be going too far to say that the authority to demand shall have that effect from its date.
*88 I think, therefore, that there was error in the instruc^orl giyen to the jury, that the resumption of possession was to be reckoned from the date of the power. I am also of opinion that the deed of loan mentioned in the third bill of exceptions, not having been recorded, and not having been accompanied by a public, open and notorious return and reloan of the slave (see Boyd & Swepson &c. v. Stainback &c. 5 Munf. 305.) was improperly admitted to go to the jury. I am therefore of opinion to reverse the judgment, set aside the verdict, and send the cause back for a new trial.
Judgment reversed and new tidal awarded.